
**KRIS J. KRAUS**
California State Bar No. 233699
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467
Kris_Kraus@fd.org

Attorneys for Mr. Jose Lopez-Panagua

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE MARILYN L. HUFF)**

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>  )<br>       Plaintiff,  )<br>  )<br>v.  )<br>  )<br>JOSE LOPEZ-PANAGUA,  )<br>  )<br>       Defendant.  )<br>_____ ) | CASE NO.: 08CR1355-MLH<br><br>DATE: AUGUST 25, 2008<br>TIME: 2:00 P.M.<br><br>STATEMENT OF FACTS AND<br>MEMORANDUM OF POINTS AND<br>AUTHORITIES IN SUPPORT OF MOTIONS |

I.

**STATEMENT OF FACTS**[1]

Mr. Lopez-Panagua incorporates by reference the facts recounted in his previously filed motions.

//
//
//
//
//
//

---

[1] The statement of facts in the previous motions were based, in part, on materials received from the government. Mr. Lopez-Panagua does not accept this statement of facts as his own, and reserves the right to take a contrary position at motions hearing and trial. The facts alleged in these motions are subject to amplification and/or modification at the time these motions are heard

## II.

## **THE COURT MUST SUPPRESS ANY PRE-MIRANDA WARNING STATEMENTS BY MR. LOPEZ-PANAGUA**

**A.    The Court Must Suppress Mr. Lopez-Panagua's Alleged Pre-Miranda Statements Because They Were Elicited as the Result of Custodial Interrogation.**

The material produced thus far by the government indicates that Agent Navarro first confronted and interrogated Mr. Lopez-Panagua, regarding his immigration status, at an unknown time, in an area located approximately two miles north of the Tecate, California Port of Entry.

"The ruling in Miranda prohibits 'custodial interrogation' unless the government first gives warnings to the [subject of the interrogation]." United States v. Gonzalez-Sandoval, 894 F.2d 1043, 1046 (9th Cir. 1990). Custodial interrogation occurs when under the totality of the circumstances the questions asked by the police are reasonably likely to elicit an incriminating response from the subject. Id. Although questions that include routine biographical information usually do not trigger the safeguard of Miranda v. Arizona, "[t]hat exception is inapplicable . . . where the elicitation of information regarding immigration status is reasonably likely to inculpate the [subject]." Id.

In United States v. Kim, 292 F.3d 971, 973 (9th Cir. 2002),[2] the Ninth Circuit noted that the following factors are to be considered in deciding whether or not a police-dominated atmosphere exists: "(1) the language used to summon the individual;  (2) the extent to which the defendant is confronted with evidence of guilt;  (3) the physical surroundings of the interrogation;  (4) the duration of the detention;  and (5) the degree of pressure applied to detain the individual." Id. (citations omitted); see also United States v. Estrada-Lucas, 651 F.2d 1261, 1265 (9th Cir. 1980) (in context of custody at the border "[t]he factors to be weighed are the language used to summon him, the physical surroundings of the interrogation, the extent to which he is confronted with evidence of his guilt, and the pressure exerted to detain him."). The Ninth Circuit also recognizes that "question[s] implying that [the agent] suspected [the defendant] of criminal activity" can

---

[2]    In Kim, the Ninth Circuit found that a Korean woman who went to her own store, voluntarily, because an officer's visit prompted her to do so was in custody even though she was in familiar surroundings because the police "temporarily took over complete control of Kim's store creating a 'police-dominated atmosphere." 292 F.3d at 977. This combined with difficulty with English and isolation from family supported the finding that Kim did not willingly agree to submit to an encounter with the police. Id.

give rise to a reasonable belief that one is not free to ignore the questions and leave. <u>United States v. Chavez-Valenzuela</u>, 268 F.3d 719, 725 (9th Cir. 2001).[3]

It is not necessary that an individual be physically restrained in any fashion. In <u>Beraun-Panez</u>, the Ninth Circuit found that an individual questioned out in an open field, who was neither held nor handcuffed nor told that he was under arrest, was nonetheless in custody for <u>Miranda</u> purposes. <u>Beraun-Panez</u> held that "[a]lthough not physically bound, Beraun-Panez was subjected to psychological restraints just as binding." 812 F.2d at 580.[4]

The government may rely on <u>United States v. Galindo-Gallegos</u>, 244 F.3d 728 (9th Cir. 2001), to argue that the pre-<u>Miranda</u> interrogation of Mr. Lopez-Panagua was not improper, or even violative of <u>Miranda</u>, because Mr. Lopez-Panagua was not in custody. In <u>Galindo-Gallegos</u>, the Ninth Circuit held that the defendant was not in custody because he was questioned in a group of fifteen to twenty people. Relying on the Supreme Court's opinion in <u>Berkermer v. McCarty</u>, 468 U.S. 420 (1984), the Ninth Circuit noted that while the questioning in <u>Galindo-Gallegos</u> was "not as public as a traffic stop on a busy street, [as was the case in <u>Berkemer</u>,] it was public for the reason that mattered; no alien had reason to fear abuse by an officer and an unscrupulous officer would have been deterred from using illegitimate means by all the witnesses." <u>Galindo-Gallegos</u>, 244 F.3d at 732.

Here, the criteria for a police-dominated atmosphere as articulated in <u>Kim</u> are clearly met. Regarding the language used by Agent Navarro to summon Mr. Lopez-Panagua, while the boiler-plate report does not state the exact words used in identifying himself as a border patrol agent and to get Mr. Lopez-Panagua into custody, whatever words used clearly indicated to Mr. Lopez-Panagua that he was a law enforcement officer and that Mr. Lopez-Panagua was in custody. The facts that the agent was in uniform and carrying a gun substantiates this factor. Concerning the extent to which Mr. Lopez-Panagua was confronted with guilt, he was apprehended a short distance from the border and immediately interrogated about his immigration status. The physical surrounding of the interrogation was clearly a remote area as evidenced by the reports description

---

[3]    <u>Chavez-Valenzuela</u> involved a roadside stop of a motorist on a public street, out in the open.

[4]    The police confronted Beraun-Panez with his alienage, accused him of lying and kept him separated from his co-worker in a remote rural area. <u>Beraun-Panez</u>, 812 F.2d at 580.

of the area as devoid of any landmarks such as homes or businesses. It is, however, unclear how long the detention took place or the amount of pressure applied to Mr. Lopez-Panagua since the agent's report does not address how long the interrogation and detention took and only uses boiler-plate language to describe Mr. Lopez-Panagua's responses. Further, the defendant in Kim was isolated from family, a fact that the Court gave great weight to. Kim, 292 F.3d at 977. Here, Mr. Lopez-Panagua was with two strangers and an armed border patrol agent in a remote and rural area, as in Beraun-Panez. Thus, the statements must be suppressed.

The instant case can also be clearly distinguished from Galindo-Gallegos. From the material produced by the government thus far it is apparent that there were only two other suspected illegal aliens present when Mr. Lopez-Panagua was questioned by Agent Navarro, not amongst the large group of "fifteen or twenty" at issue in Galindo-Gallegos. Moreover, as evidenced by the report, they were clearly in a remote area. As stated before, the report does not indicate the presence of any landmarks near where the arrest was made. This is certainly not the type of "public" questioning that Galindo-Gallegos validated. It is, rather, the type of physical environment that militates toward a finding of custodial interrogation and, therefore, statements must be suppressed.

The physical environment of the questioning is not the only important factor. The substance of the questioning is relevant as well. Here, the agent's questioning bore on Mr. Lopez-Panagua's alienage, which is an element of the charged offense, 8 U.S.C. § 1326. See United States v. Meza-Soria, 935 F.2d 166, 171 (9th Cir. 1991). This question in a setting so close to the border carried with it implicit suspicion of criminal activity. A person, such as Mr. Lopez-Panagua, subjected to such questioning in such a situation does not reasonably feel free to leave, and, thus, is subject to custodial interrogation. See Chavez-Valenzuela, 268 F.3d 719, 725 (9th Cir. 2001).

In the context of an encounter between border patrol and an individual near the international border, any questioning regarding an individual's alienage falls under the rubric of custodial interrogation. Furthermore, because of the close relationship between civil and criminal immigration investigations, "[c]ivil as well as criminal interrogation of in-custody defendants by INS [agents] should generally be accompanied by the Miranda warnings." United States v. Mata-Abundiz, 717 F.2d 1277, 1279 (9th Cir. 1983).

In United States v. Gonzalez-Sandoval, 894 F.2d at 1043 (9th Cir. 1990), the defendant appeared at a local police station to provide his state parole officer with a urine sample. Id. at 1046. A second parole

1 officer accused Gonzalez-Sandoval of being a deported alien and called the Border Patrol. Id. The Border
2 Patrol came to the station, and without warning him pursuant to Miranda, asked Gonzalez-Sandoval where
3 he was born and whether he possessed documents to verify the legality of his presence in the United States.
4 Id. The Border Patrol agents then took Gonzalez-Sandoval to the Calexico Border Patrol Station. Failing to
5 administer the Miranda warnings a second time, the agents questioned Gonzalez-Sandoval about any alias he
6 possessed. Id. The agents ran an INS record check against Gonzalez-Sandoval's name and alias, and found
7 Gonzalez-Sandoval's prior immigration record. Id. The Ninth Circuit found that the district court erred in
8 failing to suppress the unwarned, prompted statements by Gonzalez-Sandoval about his name and alias. Id.
9 at 1047.

10       In United States v. Mata-Abundiz, an INS agent visited the defendant in a state jail to obtain
11 biographical information to determine the defendant's citizenship status.  717 F.2d at 1278. The agent knew
12 about the state charges against Mata-Abundiz, and did not warn him pursuant to Miranda prior to obtaining
13 the biographical data. Id. Afterwards, the agent made further inquiries at his office and within three hours
14 returned to the jail to charge Mata-Abundiz with a federal immigration offense. Id. Despite the fact that the
15 agent characterized his interrogation as pursuant to a civil investigation, the court held that the agent should
16 have warned Mata-Abundiz as required by Miranda because the agent knew his interrogation could lead to
17 federal charges against the defendant. Id. at 1278-1279.

18       Here, it is obvious that the information the agent elicited from Mr. Lopez-Panagua, during the
19 interrogation, regarding his citizenship and application for permission to enter was "reasonably likely to
20 inculpate" him. The questions served no purpose other than inculpation. They are in fact two of the four
21 elements that they government must prove to obtain a conviction for a violation of 8 U.S.C. § 1326.
22 Moreover, it is undisputed that Mr. Lopez-Panagua was not read his Miranda rights at that point, nor advised
23 that his answers to the agent's questions could result in federal charges against him.

24       Thus, Mr. Lopez-Panagua moves to suppress all statements, and the fruits thereof, obtained in
25 violation of Miranda.

26 //
27 //
28 //

**B.    Mr. Lopez-Panagua Requests a Hearing Pursuant to 18 U.S.C. § 3501 Concerning The Admissibility Of Any Statements That The Government Intends to Use Against Him at Trial.**

This Court should conduct an evidentiary hearing to determine whether Mr. Lopez-Panagua's statements should be admitted into evidence. Under 18 U.S.C. § 3501(a), this Court is required to determine, outside the presence of the jury, whether any statements made by Mr. Lopez-Panagua were voluntarily made. In addition, § 3501(b) requires this Court to consider various enumerated factors, including whether Mr. Lopez-Panagua understood the nature of the charges against him and whether he understood his rights.

Moreover, section 3501(a) requires this Court to make a factual determination. Where a factual determination is required, courts are obligated to make factual findings by Fed. R. Crim. P. 12. See United States v. Prieto-Villa, 910 F.2d 601, 606-10 (9th Cir. 1990).  Because "'suppression hearings are often as important as the trial itself,'" Id. at 610 (quoting Waller v. Georgia, 467 U.S. 39, 46 (1984)), these findings should be supported by evidence, not merely an unsubstantiated recitation of purported evidence in a prosecutor's responsive pleadings.

## III.

## CONCLUSION

For the foregoing reasons, Mr. Lopez-Panagua respectfully requests that the Court grant the above motions.

Respectfully submitted,

/s/ Kris J. Kraus

Dated: August 11, 2008

**KRIS J. KRAUS**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Lopez-Panagua